ASOCIACIÓN DE PERIODISTAS, demandante y recurrente, *v.* LIC. MARTÍN GONZÁLEZ VÁZQUEZ Y OTROS, demandados y recurridos.

*Número:* RE-88-435 *Resuelto:* 17 de enero de 1991

---

*Guillermo F. Ramos Luiña* y *Edna Santiago de Hernández,* abogados de la recurrente; *Rafael Ortiz Carrión, Procurador General,* y *Sylvia Cancio Bigas, Procuradora General Auxiliar,* abogados de El Estado Libre Asociado de Puerto Rico, recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

I

*Los hechos*

Durante el transcurso de la celebración de un proceso criminal (*Pueblo v. Edwin Rivera Sevilla,* Crim. Núm. M-87–1175, 1176 y 1184) el Tribunal de Distrito, Sala de Ponce, citó a varios periodistas para que comparecieran al mismo en calidad de testigos. Citó, además, a la gerente general del Canal Veinte (20) de Televisión (W.K.P.V.) para que entregase una cinta videomagnetofónica en la que, se alegaba, estaban registrados los actos específicos por los cuales se estaba juzgando al acusado en el proceso antes mencionado. La información y la evidencia requerida eran relevantes a la defensa del acusado.

Específicamente, el Tribunal de Distrito expidió citaciones para que el periodista Jorge Ariel Torres, el periodista gráfico Eduardo Collazo y la gerente general de W.K.P.V. acudieran al tribunal a declarar y a entregar la mencionada cinta videomagnetofónica.

Así las cosas, la demandante recurrente Asociación de Periodistas de Puerto Rico, Capítulo Miguel Rivera del Área Sur (en lo sucesivo la Asociación), solicitó y obtuvo de la empresa Multi-Media, Inc., propietaria de W.K.P.V. la custodia de la cinta videomagnetofónica requerida por el tribunal. La Asociación y el periodista señor Collazo comparecieron ante el Tribunal de Distrito y presentaron escritos por medio de los cuales se oponían a las referidas citaciones. Plantearon que el hecho de ser citados para comparecer como testigos menoscababa el derecho a la libertad de prensa consagrado en la Primera Enmienda a la Constitución de Estados Unidos, L.P.R.A., Tomo 1, y en el Art. II,

Sec. 4 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Pendiente el caso, la Asociación y algunos de los miembros que habían sido citados en el mismo presentaron una solicitud de sentencia declaratoria ante el Tribunal Superior, Sala de Ponce, con el propósito de que fuera ese foro el que dilucidara la controversia constitucional.[1]

En su solicitud, la Asociación argumentó que debido a la frecuencia con que los periodistas son citados a declarar en procedimientos judiciales sobre hechos presenciados por ellos mientras desempeñan su profesión, instancia debía establecer normas para reglamentar dichas citaciones de modo que éstas fuesen cónsonas con las disposiciones constitucionales de Estados Unidos y Puerto Rico referentes a la libertad de prensa. Posteriormente, mediante moción, solicitaron del Tribunal Superior que, en auxilio de su jurisdicción, paralizara el procedimiento seguido en el caso de *Pueblo v. Edwin Rivera Sevilla,* supra, hasta que se resolviera la controversia planteada. Dicho foro acogió la solicitud presentada y dictó orden para paralizar los procedimientos en el Tribunal de Distrito.

El codemandado recurrido, Lic. Martín González Vázquez, solicitó reconsideración de la orden. Adujo como fundamento que al ordenarse la paralización del proceso se estaba violando el derecho constitucional de su cliente a tener un juicio rápido. Impugnó, además, las alegaciones de la Asociación referentes al derecho a la libertad de prensa. Instancia reconsideró y dejó sin efecto la orden de paralización.

Reanudado el proceso en el Tribunal de Distrito, se celebró una vista en la que se le ordenó a la Asociación entregar la cinta videomagnetofónica requerida por la defensa. Luego de esto, la Asociación y los periodistas citados, demandantes recurrentes,

---

[1] En la petición original de sentencia declaratoria se incluyó como demandados a las personas siguientes: Lic. Martín González Vázquez, abogado de la defensa en uno de los casos criminales en que fueron citados los periodistas como testigos; Hon. Fiscal Antonio Ortiz; Hon. Fiscal Julio León; Hon. Fiscal Pedro G. Goyco Amador; Lic. Carlos Colón, abogado de la defensa en otro de los casos criminales; John Doe y Richard Doe. Posteriormente, con permiso del tribunal de instancia, se enmendó la demanda para traer al Estado Libre Asociado como parte en la presente acción.

presentaron en el caso de autos una moción en la que solicitaron de instancia que diseñara lo más pronto posible las normas para reglamentar la citación de periodistas. Fundamentaron esta solicitud en el hecho de que, luego de presentada la solicitud de sentencia declaratoria, habían sido citados para declarar en por lo menos dos (2) procedimientos criminales más. Los procedimientos eran los seguidos en el caso de *Pueblo v. Edwin Rivera Sevilla*, supra, y en el de *Pueblo v. Isidoro Montes Marrero*, Crim. Núm. G-87–339 al 342, G-87–1163 y M-87–273 y 274.

Antes de que el tribunal de instancia dictara la sentencia recurrida en el caso de autos, los procedimientos criminales fueron resueltos.[2] Los periodistas citados por el tribunal declararon en ambos procedimientos, y en el caso de *Pueblo v. Edwin Rivera Sevilla*, supra, presentaron la cinta videomagnetofónica requerida, la cual fue admitida en evidencia. La representación legal del Canal 20 de televisión ofreció y brindó cooperación al tribunal. Permitió que la cinta fuera observada en sus facilidades.

Esto motivó que el tribunal de instancia, en el caso de autos, dictara sentencia mediante la cual denegó la solicitud de sentencia declaratoria. Adujo como fundamento que ya no existía controversia entre las partes, puesto que los procedimientos que dieron origen a la solicitud de sentencia declaratoria habían culminado; el caso se había tornado académico. Señaló, además, que no estaba presente excepción alguna que hiciese posible la consideración de un caso a pesar de su academicidad. En cuanto a la excepción de cuestión recurrente en particular, expresó que ésta "no opera por la mera posibilidad de dicha recurrencia, sino que requiere que a pesar de ello la situación fáctica sea tal que eluda la revisión". Sentencia, pág. 5. El tribunal de instancia aclaró este dictamen al puntualizar lo siguiente:

---

(2) En el caso de *Pueblo v. Edwin Rivera Sevilla*, Crim. Núm. M-87–1175, 1176 y 1184, el tribunal emitió su fallo y encontró al acusado culpable de uno de los delitos que le fueron imputados, absolviéndolo en otros dos (2). En el caso de *Pueblo v. Isidoro Montes Marrero*, Crim. Núm. G-87–339 al 342, G-87–1163 y M-87–273–274, el acusado hizo alegación de culpabilidad en todas las infracciones que le fueron imputadas.

Esto significa que debe existir una situación donde haya una expectativa razonable o una probabilidad demostrable de que la misma controversia recurrirá envolviendo a la misma parte promovente y que aun repitiéndose la controversia, ésta nunca subsistirá hasta la etapa de revisión, por la corta duración de los eventos que provocan la controversia. Sentencia, pág. 5.

El tribunal de instancia concluyó que en el caso de autos no ocurre la situación antes descrita "pues los peticionarios pueden mantener viva la controversia dentro de los casos en que sean citados, dando oportunidad al tribunal competente para intervenir y resolver la misma". Sentencia, pág. 6. Culminó señalando que no era su función emitir una opinión consultiva o crear una regla que no tendría efecto alguno entre las partes.

El día del juicio en el caso de epígrafe, luego de la discusión sobre la doctrina de academicidad y sus consecuencias, pero antes de someter el caso a la consideración del tribunal, los demandantes recurrentes solicitaron que se tomara conocimiento judicial del hecho de que, luego de presentada la solicitud de sentencia declaratoria, varios periodistas partes en el caso fueron citados para declarar como testigos en los dos (2) casos criminales antes mencionados. Los demandados recurridos se allanaron a esta solicitud.

A pesar de que el día del juicio el tribunal de instancia tomó conocimiento judicial, según lo solicitado, esto no se hizo constar en la sentencia emitida. Los demandantes recurrentes solicitaron que se incluyeran en la sentencia, como determinación de hecho adicional, las citaciones posteriores a los periodistas. El tribunal de instancia emitió resolución —la cual hizo formar parte de la sentencia— en la que tomó conocimiento judicial de la celebración de los casos de *Pueblo v. Rivera Sevilla,* supra, y *Pueblo v. Isidoro Montes Marrero,* supra, así como del resultado de los mismos. No hizo constar explícitamente el hecho específico de la citación de varios periodistas como testigos en tales casos.

De esta sentencia recurrieron ante nos la Asociación y los periodistas demandantes alegando la comisión de dos (2) errores: que erró el tribunal de instancia al no tomar conocimiento judicial

de la citación de varios periodistas, demandantes recurrentes, como testigos en dos (2) casos distintos de naturaleza criminal luego de haberse presentado la solicitud de sentencia declaratoria, y que erró al aplicar el concepto de academicidad y denegar la solicitud presentada.

Decidimos revisar la sentencia dictada por el tribunal de instancia y expedimos el correspondiente mandamiento.

## II

*El conocimiento judicial*

Pasemos ahora a considerar el primer error señalado. Las disposiciones aplicables a esta controversia están preceptuadas en las Regla 11(A)(2) y 11(B) de Evidencia, 32 L.P.R.A. Ap. IV: el criterio de la determinación exacta e inmediata, y el conocimiento judicial permisible *vis-à-vis* el mandatorio. Procedamos a analizar dichas disposiciones.

La Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, en términos generales, nos indica cuándo y cómo los tribunales habrán de tomar conocimiento judicial de hechos adjudicativos.[3] Se ha señalado por algunos tratadistas que los hechos adjudicativos son aquellos "realmente en controversia de acuerdo a las alegaciones de las partes y al derecho sustantivo que

[3] Esta regla establece lo siguiente:
*"Regla 11. Conocimiento judicial de hechos adjudicativos.*
"(A) Los tribunales podrán tomar conocimiento judicial de hechos que no son razonablemente objeto de controversia por:
"(1) Ser de conocimiento general dentro de la jurisdicción territorial del tribunal, o
"(2) ser susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada.
"(B) Los tribunales podrán tomar conocimiento judicial, a iniciativa propia y deberán tomar conocimiento judicial a solicitud de parte cuando ésta provea al tribunal con información suficiente para permitirle que tome tal conocimiento.
"(C) La parte que solicita que se tome conocimiento de un hecho debe notificar la solicitud a la parte adversa para dar oportunidad a ésta de prepararse y enfrentarse a la solicitud, si así lo estimare conveniente. Una parte tiene derecho a ser oída en torno a si procede tomar conocimiento judicial.
"(D) Los tribunales podrán tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la etapa apelativa.
"(E) En casos criminales por jurado el juez instruirá a los miembros del jurado de que deben aceptar como concluyente cualquier hecho del cual se haya tomado conocimiento judicial." 32 L.P.R.A. Ap. IV.

gobierna el caso". E.L. Chiesa, *Práctica Procesal Puertorri-queña: Evidencia,* San Juan, Pubs. J.T.S., 1983, Vol. I, Cáp. II, pág. 27. En los casos por jurado son los hechos que de ordinario le corresponde dilucidar a ese Cuerpo o Panel. En casos civiles o por tribunal de derecho, se trata de los hechos que conciernen específicamente a las partes involucradas. Chiesa, *op. cit.*

El inciso (A) de la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, establece los dos (2) criterios bajo los cuales procede tomar conocimiento judicial de hechos adjudicativos. El inciso (A)(1) nos indica el criterio del *conocimiento general.* Señala que se puede tomar conocimiento judicial de aquellos hechos que sean de conocimiento general dentro de la jurisdicción territorial del tribunal. El citado inciso (A)(2) de la Regla 11 de Evidencia nos habla del criterio de *determinación exacta e inmediata.* Se trata de hechos "susceptibles de determinación inmediata y exacta" al recurrirse "a fuentes cuya exactitud no puede ser razonablemente cuestionada". 32 L.P.R.A. Ap. IV, R. 11(A)(2); Chiesa, *op. cit.*

En cuanto a este criterio, el profesor Chiesa nos señala que:

> . . . Aquí los hechos no tienen que ser de conocimiento general; pudiera tratarse de un hecho que casi nadie conoce. Lo esencial es que pueda averiguarse indubitablemente, con prontitud y precisión, acudiendo a fuentes de incuestionable confiabilidad. Tomemos un ejemplo: que "el 1 de agosto de 1967 fue un martes". Este es un hecho verdadero que no es, en modo alguno, de conocimiento general. Sin embargo, es susceptible de ser comprobado mediante fuentes de indisputable confiabilidad. No se trata de la confiabilidad para un escéptico. Por eso es suficiente que pueda acudirse a un calendario. A ambos criterios es de aplicación el siguiente principio general: el conocimiento personal del juzgador no es suficiente para tomar conocimiento judicial. Chiesa, *op. cit.,* pág. 28.

■ Por su parte, el citado inciso (B) de la Regla 11 de Evidencia establece una distinción entre el conocimiento judicial permisible y el conocimiento judicial mandatorio. Una vez queda establecida la situación prevista en el inciso (A) de esta regla, el tribunal puede tomar conocimiento judicial del hecho independientemente de que alguna de las partes lo solicite. Este es el llamado "conocimiento judicial permisible". Por el contrario, si

una parte solicita del tribunal que sea éste quien tome conocimiento judicial del hecho establecido, y lo pone en condiciones de hacerlo, dicho tribunal viene obligado a tomar conocimiento judicial según solicitado. Este es el "conocimiento judicial mandatorio". Chiesa, *op. cit.*(4)

En cuanto a si procede o no tomar conocimiento judicial de los procesos o casos presentados ante los tribunales de justicia, el tratadista McCormick nos ha dicho lo siguiente:

> It would seem obvious that the judge of a court would take notice of all of the records of the institution over which he presides, but the courts have been slow to give the principle of judicial notice its full reach of logic and expediency. It is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings. The principle seemingly is equally applicable to matters of record in the proceedings in other cases in the same court, and some decisions have recognized this, but many courts still adhere to the needless requirement of formal proof, rather than informal presentation, of recorded proceedings in other suits in the same court. Matters of record in other courts are usually denied notice even though it would appear manifest that these public documents are logically subject to judicial notice as readily verifiable facts. E.W. Cleary, *McCormick's Handbook of the Law of Evidence*, 2da ed., Minnesota, Ed. West Publishing Co., 1972, págs. 765–766.

■ Por su parte, Chiesa señala que "[b]ajo la Regla 11(A)(2) es posible tomar conocimiento judicial de los récords o autos de los casos radicados ante los tribunales. Esto quiere decir que puede tomarse conocimiento judicial de los procedimientos habidos en otra causa, incluyendo la sentencia o resolución que dispuso del caso". Chiesa, *op. cit.*, págs. 34–35.

■ En síntesis, bajo las disposiciones de la Regla 11(A)(2) de Evidencia, *supra*, se puede tomar conocimiento judicial de los procedimientos celebrados y de la sentencia o resolución dictada

---

(4) Para una discusión y análisis más extenso sobre el alcance de la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, véase E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. II, págs. 27–37.

en cualquier causa seguida ante el mismo tribunal que toma conocimiento judicial o en cualquier otro tribunal dentro de la jurisdicción de aquél. Por tratarse de hechos cuya comprobación o determinación puede efectuarse de forma exacta e inmediata (sólo hay que acudir a la secretaría del tribunal en cuestión), es innecesario exigir en estos casos que se presente evidencia formal de los mismos.

■ Por su parte, y a modo de recapitulación de lo antes indicado a este respecto, la citada Regla 11(B) de Evidencia establece que, una vez se determina afirmativamente que los hechos son de conocimiento general o que pueden comprobarse de forma inmediata o exacta, el tribunal puede tomar conocimiento judicial motu proprio o a solicitud de parte. Si lo hace motu proprio, estamos ante una situación de conocimiento judicial permisible. Si media solicitud de parte y ésta pone al tribunal en posición de tomar conocimiento judicial, el tribunal está en la obligación de así hacerlo. Ante esta situación el conocimiento judicial se hace mandatorio. Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV.

En el caso de autos, el día en que se celebró el juicio en su fondo los demandantes recurrentes solicitaron del tribunal que se tomara conocimiento judicial del hecho de que varios periodistas codemandantes fueron citados para declarar como testigos en dos casos criminales, y que dichas citaciones fueron hechas después de presentada la solicitud de sentencia declaratoria. La parte demandada no se opuso a que el tribunal tomara conocimiento judicial según solicitado. El día del juicio el tribunal de instancia procedió a tomar conocimiento judicial del hecho de las citaciones. En estas circunstancias era mandatorio que así lo hiciera. Al hacerlo se apegó correctamente a las disposiciones de la Regla 11 de Evidencia, *supra*.

Sin embargo, el hecho del cual se tomó conocimiento judicial no fue incluido en la sentencia dictada por el tribunal de instancia. Esto provocó que, mediante moción al efecto, los demandantes recurrentes solicitaran que se incluyera como determinación de hecho adicional el hecho de las citaciones cursadas, de lo cual se

tomó conocimiento judicial en Sala el día del juicio. El tribunal de instancia reaccionó y emitió una resolución mediante la cual tomó conocimiento judicial de que los casos criminales aludidos fueron celebrados, así como del resultado de los mismos. No hizo mención específica de la existencia de las citaciones a varios de los periodistas demandantes.

En su informe ante nos el Procurador General plantea que no discutirá el primer señalamiento de error de los recurrentes relativo al conocimiento judicial de las citaciones, por entender que se trata de un hecho cierto e incontrovertido. Sin embargo, alegan que a pesar de que el tribunal de instancia no señaló de forma directa que tomó conocimiento judicial de los hechos señalados por los recurrentes, era suficiente con hacer mención de la celebración y resultado de los casos criminales señalados. Fundamentan esta alegación en que, de un examen de las minutas de estos casos, surge claramente que varios periodistas demandantes fueron citados a declarar según lo alegado por los recurrentes.

■ Al tomarse conocimiento en términos generales de la celebración de un proceso judicial, puede entenderse que se toma conocimiento judicial de todos los incidentes acaecidos en dicho proceso. Estos, generalmente, están recogidos en los autos mantenidos por el tribunal de instancia. Un examen de los mismos es suficiente para comprobar incidentes específicos como el de las citaciones hechas a varios de los periodistas demandantes recurrentes.

■ No obstante lo anterior, dada la situación fáctica tan particular de este caso, es necesario reconocer que el hecho del cual se solicitó al tribunal de instancia tomar conocimiento judicial es uno relevante a la controversia sobre la academicidad del caso de autos. El juicio que se efectuó giró en torno a si procedía o no citar a periodistas como testigos en procesos judiciales, no en cuanto a si se celebró o no determinado proceso y el resultado del mismo. Una vez los demandantes recurrentes solicitaron del tribunal de instancia que tomara conocimiento judicial del hecho

de las citaciones y pusieron al tribunal en posición de hacerlo,(5) procedía que así se hiciera; sobre todo cuando en el caso de autos la parte demandada recurrida se allanó a la solicitud de los demandantes.

## III

*La academicidad*

El concepto "academicidad" ha sido previamente analizado por este Tribunal. *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988); *Noriega v. Gobernador*, 122 D.P.R. 650 (1988); *Nogueras v. Hernández Colón*, 127 D.P.R. 638 (1991).

En *E.L.A. v. Aguayo*, supra, aclaramos la autoridad de los tribunales para determinar si un caso es o no, entre otras cosas, académico. Señalamos además que "[e]sta autoridad nace del elemental principio de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *E.L.A. v. Aguayo*, supra, págs. 558–559. Al considerar el concepto "academicidad" hay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente. Este análisis es vital para determinar la existencia de los requisitos constitucionales ("caso o controversia") o jurisprudenciales de justiciabilidad.(6) Un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se

---

(5) Los demandantes recurrentes proveyeron al Tribunal Superior información concerniente al nombre de las partes y los números asignados a los casos criminales celebrados ante el Tribunal de Distrito, en los que algunos de los periodistas comparecientes fueron citados como testigos. Véase nota al calce núm. 2.

(6) La doctrina de academicidad tiene fundamentos constitucionales en la jurisdicción federal norteamericana. En dicha jurisdicción, para dar paso a la litigación, se requiere la existencia de un "caso o controversia". Art. III, Sec. 2 de la Constitución de Estados Unidos, L.P.R.A., Tomo 1.

En Puerto Rico, por el contrario, nuestra Constitución no contiene el requisito de "caso o controversia" requerido en la jurisdicción federal. No tenemos esa limitación constitucional. Sin embargo, al resolver el caso de *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958), adoptamos jurisprudencialmente la doctrina de autolimitación judicial existente en la jurisdicción norteamericana.

pierde. L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, págs. 82–83. Nota, *The Mootness Doctrine in the Supreme Court*, 88 Harv. L. Rev. 373, 376 (1974).

Ahora bien, en la jurisdicción estadounidense, la doctrina de academicidad no tiene raíces estricta o exclusivamente constitucionales. Mucho antes de la aprobación de la Constitución norteamericana, la doctrina de la academicidad se había desarrollado como una limitación del *common law* a la obligación de las cortes de decidir los casos ante su consideración. En este sistema de derecho la academicidad, inicialmente, estuvo dirigida a atender consideraciones de economía judicial. D. Kates y W. Baker, *Mootness in Judicial Proceedings: Toward a Coherent Theory*, 62 Cal. L. Rev. 1385, 1412 (1974). Esta tendencia preconstitucional prevalece aún hoy día al considerar los tribunales el aspecto de la academicidad, aunque la misma se ha enmarcado dentro del concepto más amplio de la autolimitación judicial:

> While the Supreme Court has sometimes stated that mootness is a constitutional limitation, it has at other times been willing to relax the mootness rule so that the requirement will not be so "rigid" as to prevent the review of important constitutional issues. Mootness should therefore properly be regarded as rooted in part in the constitutional limitation of the judicial power to cases and controversies, although its application is rooted as well in a rule of self-restraint which may be relaxed at times by the Court. (Citas omitidas.) 1 *Treatise on Constitutional Law: Substance and Procedure* Sec. 2.13, págs. 102–103 (1986). Véase, además, R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 122.

Una vez trazado el origen de esta doctrina, procede examinarla más específicamente teniendo presente los contornos de la controversia planteada ante nos.

---

Para un análisis más detallado de lo antes señalado, véase R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, Cap. III.

Se han elaborado varias definiciones sobre el concepto de academicidad. Algunas de ellas han sido bastante limitadas, ceñidas más bien al significado técnico del término.(7)

En *E.L.A. v. Aguayo*, supra, pág. 584, acogimos una definición mucho más abarcadora y flexible de este concepto. Allí señalamos:

> Una de las definiciones más aceptadas explica que un caso académico (*moot*) . . . es "uno en que se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente . . . .".

Una vez se determina que un caso es académico los tribunales, por imperativo constitucional (ausencia de "caso o controversia") o por motivo de autolimitación judicial, deben abstenerse de considerarlo en sus méritos. Sin embargo, aun ante la presencia de un caso evidentemente académico, las complejidades de la doctrina nos llevan a preguntarnos si existe alguna razón que mueva al tribunal a considerar tal caso impregnado de academicidad. Tribe, *op. cit.*, pág. 84.

Así, se han elaborado una serie de excepciones que, de estar presente alguna de ellas, permitirían que se considere un caso académico. En cuanto a éstas, hemos señalado que las mismas

> . . . cobran vigencia en aquellos casos en los que aun cuando la decisión del tribunal no afecta a las partes involucradas, presenta

---

(7) En el caso *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 724–725 (1980), se definió el concepto "academicidad" de la manera siguiente:

"Este concepto recoge la situación en que, aun cumplidos todos los requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución."

Para otra definición limitada del concepto "academicidad", véase D. Kates y W. Barker, *Mootness in Judicial Proceedings: Toward a Coherent Theory*, 62 Cal. L. Rev. 1385, 1387 (1974); allí se dice lo siguiente:

"We shall, however, restrict the term to its narrow technical meaning and will describe as moot only those cases in which a justiciable controversy once existing between the parties is no longer at issue due to some change in circumstance after the case arose."

una *cuestión recurrente o repetitiva del asunto planteado —Roe v. Wade*, 410 U.S. 113 (1973); *Moore v. Ogilvie*, 394 U.S. 814 (1969); *So. Pac. Terminal Co. v. Int. Comm. Comm.*, 219 U.S. 498 (1911)— en aquellos casos en que la propia parte demandante termina voluntariamente su conducta ilegal —*Com. de la Mujer v. Srio. de Justicia*, supra; *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)— y en aquellos donde la situación de hechos ha sido cambiada voluntariamente por el demandado, pero que no tiene visos de permanencia, *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953). De igual manera se plantea una excepción cuando en un caso se ha certificado por el tribunal una clase, de conformidad con la Regla 20 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), y la controversia se torna académica para un miembro de la clase, mas no para el representante de la misma. *Sosna v. Iowa*, 419 U.S. 393 (1975); *Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976), ·y en los casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, págs. 122–126; L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988. (Énfasis suplido.) *El Vocero v. Junta de Planificación*, supra, pág. 124.

En el caso de autos, al denegar la solicitud de sentencia declaratoria, el tribunal de instancia dictaminó que el caso se había convertido en académico al cual no le aplicaba la excepción de "carácter recurrente o repetitivo del asunto planteado". El tribunal de instancia va más allá y señala, al discutir esta excepción, que la misma

. . . no opera por la mera posibilidad de dicha recurrencia, sino que requiere que a pesar de ello la situación fáctica sea tal que eluda la revisión . . . . Esto significa *que debe existir una situación donde haya una expectativa razonable o una probabilidad demostrable de que la misma controversia recurrirá envolviendo a la misma parte promovente y que aun repitiéndose la controversia, ésta nunca subsistirá hasta la etapa de revisión, por la corta duración de los eventos que provocan la controversia.* (Citas omitidas y énfasis suplido.) Sentencia, pág. 5.

◼ La excepción del carácter recurrente o repetitivo del asunto planteado presenta varios factores que debemos analizar

individualmente: (1) la probabilidad de la recurrencia y (2) las partes involucradas en el procedimiento. Ambos factores están estrechamente ligados entre sí.

En cuanto a la probabilidad de la recurrencia, se ha dicho que es el factor primario en el proceso de concluir si una determinación afirmativa de academicidad promoverá la finalidad de la economía o autolimitación judicial. Kates y Baker, *supra*, pág. 1413. En aquellos casos donde exista la probabilidad de que la controversia se repita o recurra, los tribunales deben considerar el asunto planteado a pesar de que el mismo haya advenido académico.

En lo referente a las partes en litigio, en el caso de *Com. de la Mujer v. Srio. de Justicia*, supra, señalamos que para que aplique la excepción del carácter recurrente no es necesario que al repetirse la controversia ésta afecte a las mismas partes. Al resolver que en dicho caso la controversia no había perdido vigencia, dijimos lo siguiente:

> Obsérvese, además, que *la controversia es susceptible de surgir nuevamente aunque no sea entre los mismos protagonistas.* (Énfasis suplido.)[8] Íd., pág. 725.

Existe un criterio adicional cuya presencia es determinante al momento de decidir si existe la excepción a la condición de academicidad que estamos discutiendo. Además del carácter recurrente o repetitivo del asunto planteado, y las partes en litigio, dicho asunto debe ser de una naturaleza tal que evada su adjudicación o revisión. Esto sucede con mayor frecuencia en aquellas controversias que son de por sí de muy corta duración, pero puede haber otras razones además de la brevedad cronológica que ocasionen que una controversia sea capaz de eludir la revisión judicial.

---

[8] Igual proceder se ha adoptado con otras excepciones como lo es el caso del desistimiento voluntario por la parte demandada de su conducta ilegal.

"Si bien originalmente se requería en este respecto que la controversia fuese capaz de repetirse entre las mismas partes, se ha admitido luego la variante de que la controversia pueda repetirse con otras personas." *Com. de la Mujer v. Srio. de Justicia*, supra, pág. 728.

En Estados Unidos, el requisito de que la controversia sea capaz de evadir la revisión judicial fue establecido desde comienzos de siglo. *So. Pac. Terminal Co. v. Int. Comm. Comm.*, 219 U.S. 498 (1911).

Por nuestra parte, en el caso *Com. de la Mujer v. Srio. de Justicia*, supra, pág. 726, acogimos lo establecido en la jurisdicción norteamericana. En relación con la controversia allí trabada, señalamos que:

> Haya concluido o no el caso entre tales partes, es una controversia *"capaz de repetirse pero sujeta a evadir su adjudicación"*. (Énfasis suplido.)

 En el caso de autos, una vez resueltos los casos a que fueron citados para comparecer como testigos los periodistas codemandantes, la controversia planteada se convirtió en académica. No obstante lo anterior, existe la probabilidad de que tales periodistas, así como otros, puedan ser citados posteriormente a comparecer como testigos en algún procedimiento judicial.(9) De hecho, en este caso varios periodistas codemandantes fueron

---

(9) No consideramos aquí, por no ser pertinente, los derechos que puedan cobijar a cualquier testigo ordinario en los procedimientos judiciales, sean éstos de naturaleza civil o criminal. En otras jurisdicciones se han promulgado Cartas de Derecho de los testigos con el fin de brindar a éstos la protección necesaria para que puedan cumplir con su función de informar sobre los eventos por ellos presenciados y que sean pertinentes para la celebración de un proceso judicial. La nuestra no ha sido la excepción. Se ha puesto especial énfasis en el caso de los testigos de actos delictivos. Se pretende brindarles protección de actos de intimidación o amenazas por parte de los acusados u otras personas con interés en el resultado del proceso. Véase Carta de Derechos de las Víctimas y Testigos de Delito, Ley Núm. 22 de 22 de abril de 1988 (25 L.P.R.A. sec. 973 *et seq.*). Además, se intenta estimular su cooperación proveyéndoles honorarios, gastos de dieta y viaje (*Reglamento fijando tipos de honorarios, gastos de viaje y dietas para jurados y testigos*, 4 L.P.R.A. Ap. X; véase, además, 34 L.P.R.A. sec. 752) así como evitar que sus patronos los dejen cesantes por razón de su comparecencia a los tribunales.

Para un estudio más abarcador sobre el establecimiento y protección de los derechos de los testigos, véanse: *Victim/Witness Legislation: An Overview*, U.S. Dept. of Justice, Bureau of Justice Statistics, 1984; M. Lim, *Victims, Witnesses and Courts*, National Center for State Courts, 1986; F. Cannavale y F. Falcon, *Witness Cooperation*, Massachusetts, Lexington Books, 1976.

Reconocemos, además, la necesidad de considerar y discutir en torno a la creación de unas guías o directrices adecuadas para ser utilizadas en casos de citación de periodistas como testigos en procedimientos judiciales, sean éstos de naturaleza civil o criminal. Sin embargo, no es éste el momento adecuado para acometer dicha tarea.

citados a comparecer ante los tribunales como testigos luego de entablarse la presente solicitud de sentencia declaratoria.

De acuerdo con la doctrina antes expuesta, las citaciones posteriores no tienen que ocurrir necesariamente con las mismas partes del presente litigio para que sea de aplicación la excepción al planteamiento de academicidad aquí discutida.

■ Además, no sólo se cumple con el requisito del carácter recurrente de la controversia de autos sino que, de repetirse, al igual que sucedió en esta ocasión, eludiría la revisión. Esto es así debido a que, de permitirse la dilucidación del planteamiento de constitucionalidad que hacen los periodistas en medio de un proceso criminal, se podría incurrir en una seria dilación de dicho proceso que podría conllevar a la violación del derecho constitucional a juicio rápido garantizado a todo acusado.(10) Ejemplo de lo anterior es precisamente lo sucedido en el caso de autos. Al solicitarse la sentencia declaratoria por la parte demandante se expidió, a petición de ésta, una orden mediante la cual se paralizaba el proceso criminal. El codemandado, licenciado González Vázquez, solicitó que se dejara sin efecto dicha orden debido a que la misma atentaba contra el derecho constitucional de su cliente a que se le celebrara un juicio rápido. Ante este reclamo, el tribunal de instancia dejó sin efecto su orden de paralización.

En *Com. de la Mujer v. Srio. de Justicia*, supra, pág. 727, al enfrentarnos a un asunto similar al de autos, concluimos que:

> Este foro puede y debe decidir la cuestión planteada porque aun siendo capaz de repetirse puede evadir revisión por este Tribunal dada la prontitud que venimos inyectándole a los procedimientos civiles y criminales y a las garantías de juicio rápido, entre otras, que existen a favor del acusado.

■ En el presente caso, al igual que en el caso *Com. de la Mujer v. Srio. de Justicia*, supra, el vehículo procesal utilizado

---

(10) Además, la determinación de si la citación de un periodista como testigo a un procedimiento judicial constituye una violación de las disposiciones constitucionales referentes a la libertad de prensa, es en realidad una controversia tangencial o colateral al asunto tratado en el caso a que es citado. Entrar a discutir este asunto equivaldría, en términos generales, a una dilación indebida del proceso principal.

—la sentencia declaratoria— es el adecuado para resolver la controversia trabada entre las partes. Es permisible el uso de la sentencia declaratoria (Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Charana v. Pueblo*, 109 D.P.R. 641 (1980)) como mecanismo de solución a planteamientos constitucionales. *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978); *Com. de la Mujer v. Srio. de Justicia*, supra. La decisión a que se llegue no tendrá el efecto ni podrá considerarse como una opinión consultiva. El segundo error señalado fue cometido.

## IV

Por todo lo antes expuesto, *se dicta sentencia mediante la cual se revoca la sentencia recurrida dictada por el Tribunal Superior, Sala de Ponce, el 18 de agosto de 1988 y se ordena la continuación de los procedimientos del presente caso en instancia de acuerdo con los pronunciamientos aquí vertidos.*

El Juez Asociado Señor Rebollo López disiente sin opinión escrita.