RESOLUCIÓN
Examinada la “Moción Informativa” presentada por la parte peticionaria, en la que nos expone que la moción de reconsideración presentada por la procuradora general se tornó académica por la decisión del Foro de Primera Instancia de declararlo inimputable, consideramos que este caso, a pesar de ser académico, es justiciable toda vez que versa sobre una controversia recurrente y capaz de evadir la revisión judicial.
El 6 de marzo de 2009, la Procuradora General presentó una solicitud de reconsideración de la opinión emitida por este Tribunal en el caso de epígrafe. Pueblo v. Pagán Medina, 175 D.P.R. 557 (2009). Mediante ese dictamen se pautó que una vez se determina judicialmente que un imputado de delito no es procesable mediante la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y se ordena su reclusión para tratamiento, tan sólo se puede excluir del *843 cómputo del término máximo de detención preventiva, el tiempo durante el cual éste estuvo efectivamente en una institución adecuada para su tratamiento. Al realizar el cálculo a base de lo dispuesto en ese dictamen, por exceder el término constitucional de seis meses de detención preventiva en espera de juicio, esta Curia ordenó la excarcelación inmediata del peticionario y devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.
El 21 de octubre de 2009, como parte de los procedimientos, el foro primario celebró una vista de inimputabilidad. En esa ocasión, el Psiquiatra del Estado, Dr. Rafael Cabrera Aguilar, informó al tribunal que, luego de realizar la evaluación correspondiente al peticionario, y de estudiar su expediente clínico y criminal, entendía que al momento de los hechos por los cuales se les juzgaría, éste se encontraba en estado psicótico y había perdido contacto con la realidad, por lo que no conocía la criminalidad de sus acciones. A base de ese testimonio, el tribunal declaró al peticionario inimputable y lo absolvió de todos los cargos presentados en su contra. Además, ordenó que, en conformidad con la Regla 241 de Procedimiento Criminal,(1) el señor Pagán Medina fuera ingresado en el Hospital de Siquiatría Forense de Ponce.
Como consecuencia del trámite procesal reseñado, el peticionario acude ante este Foro y nos solicita que no tome-mos en cuenta la reconsideración presentada por la Procuradora General, la cual aún está ante la consideración de este Tribunal. Aduce que esa petición del Estado se tornó académica, ya que no existe una controversia real y actual entre las partes debido a su absolución, por lo que cualquier pronunciamiento de esta Curia no tendría efecto real alguno. Según ese fundamento, nos peticiona que decline-mos expresamos sobre los méritos de la solicitud de reconsideración presentada por la Procuradora General.
*844 En vista del argumento del peticionario, debemos precisar que le asiste la razón en cuanto a que un asunto no es justiciable cuando, después de comenzado un pleito, hechos posteriores lo convierten en académico. Sobre el particular, hemos reconocido que los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución.(2) Esto es, el foro judicial no puede atender un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo.(3)
Como los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas, la “academicidad” se presenta como una doctrina de autolimitación judicial.(4) En esencia, con esta limitación sobre el poder de los tribunales se persigue evitar el uso innecesario de los recursos judiciales e impedir precedentes judiciales que resulten superfluos.(5)
Ahora bien, a pesar de que la norma general es que los tribunales deben abstenerse de entrar en los méritos de un caso que se ha tornado académico, existen circunstancias que, a manera de excepción, activan la función revisora del foro judicial al margen de que la controversia haya advenido académica. A estos efectos, hemos establecido que podemos revisar un asunto que, a pesar de ser académico, *845 versa sobre una controversia recurrente y capaz de evadir la revisión judicial.(6)
Para determinar si estamos ante una controversia de tales características excepcionales, es necesario evaluar los factores siguientes: que haya una probabilidad razonable de que la controversia recurra y que exista una probabilidad sustancial de que la controversia, a pesar de ser recurrente, eluda la revisión judicial.(7) De verificarse estos factores, se activa la excepción aludida a los efectos de evitar, entre otras cosas, que el mismo asunto se litigue repetidamente en los tribunales sin alcanzar una adjudicación definitiva.(8)
Como parte del análisis para verificar si se cumplen ambos factores, es necesario tener presente que, aunque la probabilidad sustancial de evadir la revisión judicial está presente mayormente en aquellas controversias de naturaleza efímera, pueden existir otras razones que ocasionen que una controversia deje de existir antes de que termine la litigación.(9) Además, es menester precisar que en lo relativo “a las partes en el litigio, para que aplique la excepción del carácter recurrente no es necesario que al repetirse la controversia ésta afecte a las mismas partes”.(10)
A la luz de lo anterior, resulta innegable que el caso de autos se ajusta a la excepción reseñada. Sin duda alguna, a pesar de que en esta etapa apelativa el peticionario ha sido absuelto de todos los cargos presentados en su contra, la *846 cuestión ante nuestra consideración es recurrente toda vez que, al estar pendiente de adjudicación ante este Tribunal mía solicitud de reconsideración, no se ha pautado de manera final y firme la norma aplicable. Su importancia es aún mayor debido a que lo que tenemos ante nuestra consideración es la interpretación de una norma constitucional —la detención preventiva antes del juicio no excederá de seis meses— que incide directamente sobre una cuestión de alto interés público: la capacidad del Estado de asegurar que los imputados de delitos comparezcan a la celebración del juicio en su fondo.
Con el objetivo de impedir la recurrencia de cuestionamientos de esta naturaleza, debido a que aún no hemos resuelto definitivamente la controversia, no estamos obligados a rechazar por académica la solicitud de reconsideración que pretende que reexaminemos la norma esbozada hace unos meses por este Tribunal en el caso de autos. Le corresponde a este Tribunal resolver de manera definitiva urna cuestión de alto interés público con el objetivo de establecer una norma que guíe a los funcionarios encargados de hacer cumplir las leyes penales y a aquellos responsables de interpretarlas y aplicarlas.
Ciertamente, tal como aduce el Juez Presidente Señor Hernández Denton en su voto disidente, “la normativa que regiría la interpretación del término máximo de seis meses que establece nuestra Constitución para mantener a una persona en detención preventiva en aquellos casos en que se determine que ésta no es procesable criminalmente” se estableció hace apenas diez meses en Pueblo v. Pagán Medina, supra. En este sentido, a pesar de que ésta no ha advenido final y firme, de manera muy acertada el Juez Presidente concluye que “[d]e surgir una controversia similar los tribunales deben resolver conforme a ésta normativa”. Voto disidente, pág. 7. Ahora bien, es precisamente por lo acertada de tal aseveración que la solicitud de *847 reconsideración pendiente ante nos cumple con esa excepción a la doctrina de academicidad. Veamos.
Conforme a la norma pautada en Pueblo v. Pagán Medina, supra, hoy día los Tribunales de Primera Instancia sólo están obligados a “excluir del cómputo del término máximo de detención preventiva el tiempo durante el cual [el imputado] estuvo efectivamente en una institución adecuada para su tratamiento”.(11) Si tenemos en cuenta que las controversias relativas al término de detención preventiva se generan ordinariamente a partir de una petición de hábeas corpus, es innegable concluir que el Estado, ante la orden de excarcelación dictada por un foro inferior —como consecuencia de tal pauta jurídica— sólo podrá recurrir a un tribunal de superior jerarquía con el objetivo de revisar tal dictamen. Sin embargo, nótese que tal excarcelación se suscita en el contexto de una petición de hábeas corpus, que constituye un procedimiento de naturaleza civil, distinto al proceso criminal que se lleva contra el excarcelado.(12) De esta forma, aunque se encuentre pendiente la petición del Estado a los efectos de revisar la excarcelación ordenada, el foro primario tendrá que continuar los procedimientos en cuanto al caso penal, toda vez que ya en esa etapa se ha determinado que el acusado de delito se encuentra procesable.
Precisamente, como el procedimiento penal continuará su curso, y los términos de juicio rápido obligan al Estado a actuar con ligereza, con toda probabilidad la revisión de la orden de excarcelación ante el Tribunal de Apelaciones y luego ante esta Curia, no será resuelta de manera definitiva antes de que comience el juicio del imputado. Como es sabido, una vez comenzado el juicio, la cláusula constitucional de detención preventiva(13) dejará de tener vigencia *848 y el asunto se tornará en académico. He aquí la naturaleza efímera de la controversia ante nuestra consideración.
Por lo anterior, estamos en desacuerdo con la aseveración realizada por el Juez Presidente Señor Hernández Denton en cuanto a que “[s]i este Tribunal interesa reconsiderar dicho dictamen, en estricto derecho lo que procede es esperar por el caso apropiado para tal proceder”. Como se ha demostrado, ese caso apropiado con toda probabilidad advendrá académico previo a que tengamos la oportunidad de considerarlo en sus méritos, pues, a juzgar por todo lo expuesto, la controversia que tenemos ante nuestra consideración definitivamente es de naturaleza efímera.(14)
En conclusión, debido a la naturaleza del asunto aquí planteado, resultará muy probable que éste eluda nuevamente nuestra revisión previo a que tengamos la oportunidad de evaluarlo y atenderlo en sus méritos. Por estas razo *849 nes, entendemos que el recurso ante nuestra consideración configura la excepción a la doctrina de academicidad por lo que es justiciable.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió un voto disidente, al cual se unió la Jueza Asociada Señora Fiol Matta. La Juez Asociada Señora Rodríguez Rodríguez no intervino.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 34 L.P.R.A. Ap. II.

 Rullán v. Fas Alzamora, 166 D.P.R. 742, 761 (2006); Cruz v. Administración, 164 D.P.R. 341, 348-349 (2005).

 Rullán v. Fas Alzamora, supra, pág. 761; Cruz v. Administración, supra, pág. 349.

 Rullán v. Fas Alzamora, supra, pág. 761; E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958).

6) C.E.E. v. Depto. de Estado, 134 D.P.R. 927, 935-936 (1993); P.N.P. v. Carrasquillo, 166 D.P.R. 70, 75 (2005).

 Cruz v. Administración, supra, pág. 350; Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924, 937 (2000).

 Cruz v. Administración, supra, págs. 349-350; Asoc. de Periodistas v. González, 127 D.P.R. 704, 721 (1991).

 P.N.P. v. Carrasquillo, supra, págs. 75-76, citando a E. Chemerinsky, A Unified Approach to Justiciability, 22 (Núm. 4) Conn. L. Rev. 677 (1990).

 Cruz v. Administración, supra, pág. 350; Asoc. de Periodistas v. González, supra, pág. 721.

 Cruz v. Administración, supra, pág. 350; Angueira v. J.L.B.P, 150 D.P.R. 10, 19-20 (2000); Asoc. de Periodistas v. González, supra, pág. 721; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 725, 728 (1980).

 Pueblo v. Pagán Medina, 175 D.P.R. 557, 562 (2009).

 Ramos Rosa v. Maldonado Vázquez, 123 D.P.R. 885, 889 (1989).

 Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1.

 Ante lo vertido por el Juez Presidente en su voto disidente, citando el caso Alvarez v. Smith, 130 S.Ct. 576 (2009), entendemos importante señalar lo siguiente: este caso se encuentra pendiente de resolver en reconsideración por parte de este Tribunal. Por lo tanto, la decisión y sentencia que emitimos y que estamos en el proceso de reconsiderar —-incluyendo nuestra opinión de 18 de febrero de 2009 que pauta una norma nueva— no ha advenido final y firme. Precisamente Alvarez v. Smith, supra, es un caso en el que el Tribunal Supremo federal había expedido un certiorari para evaluar una ley de confiscaciones del estado de Illinois. Estando pendiente de resolver el certiorari, el Tribunal Supremo federal se declara “sin jurisdicción” por haberse tornado académica la controversia. Acto seguido, el Tribunal revoca la sentencia del Tribunal de Apelaciones, devolviendo el caso a ese foro para que lo desestime. De esa manera y citando United States v. Munsingwear, 340 U.S. 36, 40 (1950), el Tribunal Supremo federal “clear[ing] the path for future relitigation of the issues”. En ese contexto señala asimismo el más Alto Foro Federal, esta vez citando U.S. Bancorp Mortage Co. v. Bonner Mall Partneship, 513 U.S. 18, 25 (1994), que “[wlhere mootness results from settlement” rather than “ “happenstance,’ ” the “losing party has voluntarily forfeited his legal remedy ... [and] thereby surrender[ed] his claim to the equitable remedy of vacatur.” A contrario sensus, cuando la academicidad surge por casualidad (“happenstance”), entiéndase, que no es el producto de un acuerdo (“settlement”), entonces debe revocarse la sentencia dictada por el foro inferior y ordenarse la desestimación, como ocurrió en Alvarez v. Smith, supra.
No hay duda de que la academicidad en el caso de autos no es el resultado de un preacuerdo (“settlement”) entre el Ministerio Público y la defensa, sino el producto del éxito de la defensa de inimputabilidad esbozada por el acusado (“happenstance”). De manera que, de la mayoría de este Tribunal coincidir con el voto disidente del Juez Presidente, y siendo fieles a la norma pautada por el Tribunal Supremo federal en Alvarez v. Smith, supra, correspondería entonces que revocáramos al foro apelativo intermedio por ausencia de una controversia real, dejando sin efecto también nuestra opinión de 18 de febrero de 2009, por sufrir del mismo defecto jurisdiccional y haberse convertido en una opinión consultiva.