Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta,
a la cual se une el Juez Presidente Señor Hernández Denton.
Por las razones que habré de exponer, disiento de la conclusión a la que llega la mayoría de este Tribunal. Opino, en primer lugar, que este caso se tornó académico por hechos sucedidos durante el trámite de recon-sideración. Sin embargo, como la Mayoría arriba a otra conclusión y emite una opinión revocatoria en reconsidera-ción, debo expresar mi más enérgico disenso en cuanto a los méritos. Al revocar el precedente establecido por este Tribunal en Pueblo v. Pagán Medina, 175 D.P.R. 557 (2009), la opinión emitida debilita excesivamente el dere-cho constitucional a no estar sujeto a detención preventiva *247 por más de seis meses y lo somete injustificadamente al arbitrio del Estado.
Como regla general, un asunto académico no es justicia-ble y, por ende, un tribunal no debe pronunciarse en cuanto a sus méritos. Véanse: Asoc. de Periodistas v. González, 127 D.P.R. 704, 719 (1991); R. Serrano Geyls, Derecho constitucional de Puerto Rico y Estados Unidos, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, págs. 97-100. Un caso se torna académico cuando deja de presentar una controversia en-tre partes adversas debido a cambios en los hechos o en el derecho. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 724—725 (1980). Como sabemos, esta norma está su-jeta a una excepción, conocida como “excepción de recu-rrencia”, que permite que el tribunal resuelva un caso que se ha tornado académico cuando el asunto ante su conside-ración es capaz de repetirse pero, por su naturaleza, con toda probabilidad también advendría académico y eludiría la revisión judicial. P.N.P. v. Carrasquillo, 166 D.P.R. 70, 76 (2005). La aplicación de esta excepción depende de un juicio de probabilidades. Además de la identidad de las partes involucradas en el posible pleito futuro, el Tribunal debe examinar la probabilidad de la recurrencia y la pro-babilidad de que la controversia evada la revisión judicial, íd.; Cruz v. Administración, 164 D.P.R. 341, 349—350 (2005). Este último factor, a su vez, requiere evaluar el tiempo que con toda probabilidad estará disponible para la acción judicial futura. Así, por su propia naturaleza, la du-ración del daño debe ser inherentemente corta, de modo que la controversia siempre se tornará académica antes de que se pueda resolver completamente. P.N.P. v. Carrasquillo, supra, pág. 76, en el cual se cita a E. Chemerinsky, Constitutional Law: Principles and Policies, 2da ed., Nueva York, Aspen Publishers, 2002, págs. 49-50.
En el asunto ante nuestra consideración, aunque hay una probabilidad razonable de que la controversia aquí planteada recurra en otro caso, no la hay respecto a que *248 ésta habrá de evadir la revisión judicial. La mejor prueba de ello es que este caso fue atendido y resuelto por el Tribunal de Primera Instancia, el de Apelaciones y el Tribunal Supremo sin que se hubiese tornado académico durante el trámite judicial.(1) No fue hasta después que se dictó la Opinión de este Tribunal, mientras estaba pendiente una moción de reconsideración, que el juez de instancia deter-minó que el acusado era inimputable. Debido a esta deter-minación, cualquier decisión en los méritos en este caso carecerá de consecuencia o efecto concreto alguno entre las partes. No hay duda, pues, de que el caso se tornó acadé-mico y estamos impedidos de resolver la controversia en los méritos.
Sin embargo, la Mayoría de este Tribunal aplica la ex-cepción de recurrencia para concluir lo contrario y entra a resolver los méritos de la controversia. Al así actuar, re-voca la opinión previamente emitida en este caso. Cierta-mente, si ponemos a un lado el elemento de academicidad, el Tribunal está en todo su derecho de reconsiderar su dic-tamen original. Sin embargo, la consistencia y estabilidad de nuestras decisiones no deben sacrificarse tan sólo por un cambio de parecer institucional. Tenemos que conside-rar que dislocar la estabilidad y certidumbre que debe te-ner el derecho tiene consecuencias, no sólo sobre las partes en el litigio, sino sobre los abogados y las abogadas del país, los tribunales de menor jerarquía y los foros adminis-trativos para quienes las decisiones del Tribunal Supremo constituyen precedente y fuente de autoridad. Entiendo, por ello, que el Tribunal debe ser parco al reconsiderar una Opinión y debe hacerlo sólo cuando ésta sea manifiesta-mente errónea, de modo que violente la razón y la justicia. Véanse: Capestany v. Capestany, 66 D.P.R. 764, 767 (1946); *249 Opinión disidente del Juez Asociado Señor Fuster Berlingeri en González v. Merck, 166 D.P.R. 659, 695 (2006).
Se entiende que un precedente es “manifiestamente erróneo” cuando se demuestra que la decisión fue producto de un razonamiento “ ‘procesalmente fallido debido a la pobre calidad de los alegatos y argumentos o al inadecuado proceso deliberativo de la corte’ ”. Opinión de conformidad del Juez Presidente Señor Hernández Denton en González v. Merck, supra, pág. 688. “[E]l segundo criterio obliga al tribunal a ponderar los efectos jurídicos, morales y sociales de su decisión [con el fin de] determinar si la norma tiene consecuencias indeseadas.” Id., pág. 689. Desafortunada-mente, la Opinión dictada en reconsideración no atiende estas consideraciones.
En Ruiz v. Alcaide, 155 D.P.R. 492, 505-506 (2001), re-solvimos que mientras el imputado o acusado no sea pro-cesable y esté recluido en una institución recibiendo trata-miento, no le cobija la protección constitucional sobre el término máximo de detención preventiva, ya que no se en-cuentra sumariado en espera de la celebración del juicio. Id., págs. 505-506. Luego, en Pueblo v. Pagán Medina, supra, reafirmamos y explicamos dicha norma para aclarar que el tiempo que se puede excluir del cómputo del término máximo de detención preventiva es aquel durante el cual el imputado estuvo efectivamente en una institución ade-cuada para su tratamiento.
En la opinión emitida en reconsideración, sin demostrar por qué dichas expresiones son manifiestamente erróneas, el Tribunal establece que se excluirá del término máximo de detención preventiva el tiempo que transcurra desde la determinación por parte del juez de instancia de “base ra-zonable” para creer que el acusado se encuentra mental-mente incapacitado. El fundamento para esta determina-ción es que el proceso dictado por la Regla 240 de Procedimiento Criminal no comienza con la vista de proce-sabilidad sino con la determinación de base razonable del *250 juez de instancia. 34 L.P.R.A. Ap. II. Razona la Mayoría que desde ese momento el proceso penal queda suspendido, el Ministerio Público está impedido de procesar al acusado y, por ende, el acusado no se encuentra pendiente de la celebración de juicio.
Es cierto que el Ministerio Público tiene que interrum-pir el proceso criminal desde que el juez de instancia de-termina que hay base razonable para creer que el impu-tado no es procesable. En ese momento se tiene que esperar a que el médico del Estado evalúe al paciente y se celebre la vista de procesabilidad. Sin embargo, como ex-plicamos en Pueblo v. Pagán Medina, supra, durante el tiempo entre la determinación de base razonable por el juez de instancia y el traslado a una institución hospitala-ria para recibir tratamiento, el acusado o imputado está sumariado en espera de ser procesado criminalmente. Pre-cisamente, la razón por la cual el Estado lo tiene en su custodia es porque se propone celebrarle un juicio. La na-turaleza de la custodia cambia cuando el acusado es tras-ladado a una institución adecuada para su tratamiento. Es entonces que no está sujeto a ser procesado y, por lo tanto, la privación de su libertad responde a razones distintas a la detención preventiva.
La interpretación que hace la Mayoría olvida que el de-recho a que el término de detención preventiva no exceda los seis meses es una “garantía al ciudadano contra posi-bles excesos de la autoridad evitando que la restricción efectiva de la autoridad se convierta en un castigo anticipado”. O.E. Resumil, Derecho Procesal Penal, San Juan, Equity Publishing Co., 1990, T. 1, Sec. 6.23, pág. 149. Su propósito, según surge de las discusiones en la Convención Constituyente, es evitar que el Estado abuse de su poder. Diario de Sesiones de la Convención Constitu-yente de Puerto Rico, Edición Conmemorativa, 2003, págs. 1594 — 1595. No podemos obviar que es el Estado quien con-trola la evaluación médica y la celebración de una vista de *251 procesabilidad, así como el traslado de una institución penal a una hospitalaria, si se determina que el imputado no es procesable. En otras palabras, ni el acusado ni su repre-sentación legal pueden determinar cuándo se le evaluará ni la fecha del traslado a la institución hospitalaria. Por consiguiente, eliminar este proceso del cálculo del límite constitucional le permite al Estado mantener suspendidos los procedimientos de forma abusiva y privar al acusado de su libertad en una institución carcelaria por un tiempo irrazonable. También, la interpretación que hace la Mayo-ría permite que el Ministerio Público, cuando lo entienda necesario, extienda el plazo de detención preventiva, adu-ciendo que hay base razonable para dudar sobre la proce-sabilidad del acusado y solicitar que se examine por un perito bajo la Regla 240 de Procedimiento Criminal, supra. Estos son precisamente los escenarios en los cuales es ne-cesaria la protección constitucional.
El derecho a no permanecer detenido preventivamente es constitucional e irrenunciable. Sánchez v. González, 78 D.P.R. 849 (1955). Por eso es que en Pueblo v. Pagán Medina, supra, decidimos que la presentación de una moción bajo la Regla 240 de Procedimiento Criminal no puede en-tenderse como una renuncia al derecho a no permanecer en detención preventiva en exceso de seis meses. Ello porque, al igual que una solicitud de autorización y posposición del juicio, la solicitud y determinación de incapacidad del im-putado para ser sometido a juicio requiere el “ejercicio de una discreción judicial sobria, para proteger al acusado en el disfrute de su derecho a un juicio justo, y en sus oportu-nidades de defensa”. Sánchez v. González, supra, pág. 857. Véase Pueblo v. Pagán Medina, supra.
La decisión de suspender la protección constitucional desde que el Tribunal encuentra base razonable para creer que el imputado no es procesable —antes de que sea efecti-vamente institucionalizado— también violenta el derecho del acusado a la presunción de inocencia. El límite constitu- *252 cional al poder de custodia del Estado tiene su fundamento en la presunción de inocencia, fundamental en nuestro sis-tema constitucional. Por eso, como el imputado se presume inocente, no debe ser castigado en anticipación de un delito por el cual no ha sido juzgado. Pueblo v. Martínez Torres, 126 D.P.R. 561 (1990). Me consterna el que los argumentos de la Mayoría excluyan la consideración de este factor, que es “primordial en todo proceso penal: la libertad personal y su principio concomitante, la presunción de inocencia”. Pueblo v. Pagán Medina, supra, pág. 572.
Por último, la consecuencia de la determinación de la Mayoría es sumamente preocupante, pues el imputado tendrá que escoger entre salvaguardar su derecho consti-tucional y estatutario a no ser enjuiciado sin la capacidad para defenderse adecuadamente y su libertad personal. Esto, sin duda, va en detrimento del derecho al debido pro-ceso de ley. Así lo reconocimos en Pueblo v. Pagán Medina, supra. Es menester enfatizar que los tribunales deben in-terpretar los derechos constitucionales de forma amplia a favor de la protección del individuo frente al poder del Estado. Por el contrario, cuando se propone una interpre-tación que limitaría las libertades personales y ampliaría el poder del Estado, la interpretación debe ser extremada-mente rigurosa.
Mis serios reparos a la decisión del Tribunal no son pro-ducto de la especulación ni surgen en abstracto. Más bien son el resultado del análisis de los hechos de este caso. Como relata la opinión mayoritaria, aunque la defensa so-licitó que se evaluara al señor Pagán Medina bajo la Regla 240 de Procedimiento Criminal el 12 de mayo de 2008, no fue hasta el 20 de agosto de 2008, cien días después, que éste fue declarado no procesable en una vista. Más aún, no fue hasta el 25 de agosto de 2008 que el imputado fue tras-ladado al Hospital Psiquiátrico Forense. Por consiguiente, luego de haber solicitado la vista de procesabilidad, el im-putado estuvo más de tres meses internado en urna institu- *253 ción penal sin recibir tratamiento. Aunque el foro de ins-tancia decidió que, en efecto, el acusado no era imputable, la realidad es que, de haberlo sido, hubiera estado sujeto a detención preventiva mucho más allá del límite constitu-cional por razones solamente atribuibles al Estado. Es do-loroso que este Tribunal, que está llamado a hacer justicia, limite de esta forma los derechos constitucionales a la li-bertad, a la presunción de inocencia y al debido proceso de ley por meros tecnicismos procesales. Por estas razones, disiento.

 Casualmente, el pasado 22 de diciembre de 2009 se presentó ante este Tribunal un recurso de certiorari que planteó la misma controversia de derecho que este caso. Véase Pueblo v. Castro Rodríguez, CC-2009-1101.