EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sonia Cedeño Aponte y Josué Orta Rivera | |
| Peticionarios | Certiorari |
| v. | 2019 TSPR 241 |
| Estado Libre Asociado de Puerto Rico, Departamento de la Familia y Departamento de Justicia | 203 DPR ____ |
| Recurridos | |

Número del Caso: CC-2018-647

Fecha: 27 diciembre de 2019

Tribunal de Apelaciones:

    Región Judicial de Bayamón y Carolina, Panel VI

Abogada de la parte peticionaria:

    Lcda. Sheila M. Torres Matías

Oficina de Asuntos Legales
Administración de Familia y Niños
Departamento de la Familia:

    Lcda. Corally Veguilla Torres
    Lcdo. Carlos M. Limardo Ortiz

Materia: Sentencia con Opinión de Conformidad y Opinión Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonia Cedeño Aponte
y Josué Orta Rivera

    Peticionarios

        v.                       CC-2018-0647        *Certiorari*

Estado Libre Asociado
de Puerto Rico,
Departamento de la Familia
y Departamento de Justicia

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 27 de diciembre de 2019.

En el presente caso -- uno que trata el tema de la adopción y que envuelve unos hechos muy particulares -- nos corresponde determinar si el Tribunal de Apelaciones erró al confirmar cierto dictamen emitido por el Tribunal de Primera Instancia, tras razonar que los aquí peticionarios, el señor Josué Orta Rivera y la señora Sonia Cedeño Aponte, carecían de legitimación activa para impugnar una determinación del Panel de Selección de Candidatos para Adopción, adscrito al Departamento de la Familia.

Por entender que el foro apelativo intermedio erró en su proceder, revocamos el dictamen recurrido. Veamos.

I.

El 24 de julio de 2014, el señor Josué Orta Rivera (en adelante, "señor Orta Rivera") y la señora Sonia Cedeño Aponte (en adelante, "señora Cedeño Aponte") recibieron en su hogar a la menor DMMA, a los cinco (5) días de nacida, y fungieron como hogar sustituto desde entonces. Interesados en adoptar a la menor, el 24 de octubre de 2016 éstos presentaron una solicitud para ser certificados como hogar preadoptivo, ante la Unidad de Adopción del Departamento de la Familia.

Así pues, conforme al *Reglamento para regir los procesos y procedimientos del Departamento de la Familia*, *infra*, para atender la referida solicitud y realizar el correspondiente estudio social de los padres, el Departamento de la Familia contaba con un término de treinta (30) días. No obstante, no es hasta el 1 de marzo de 2017, **casi cinco (5) meses después del señor Orta Rivera y la señora Cedeño Aponte haber presentado la petición de adopción**, que éstos recibieron notificación sobre el resultado favorable obtenido en el mencionado estudio. En dicha notificación se le informó, además, que el Departamento de la Familia, en un término de treinta (30) días, procedería a evaluar los documentos requeridos, ello en aras de poder certificar si el señor Orta Rivera y la señora Cedeño Aponte cumplían con los requisitos para ingresar al Registro Estatal Voluntario de Adopción (en adelante, "REVA").

**Ahora bien, al día siguiente, el 2 de marzo de 2017 -- y recordemos que habían transcurrido cinco (5) meses después de haber presentado los documentos ante el Departamento de la Familia -- el señor Orta Rivera y la señora Cedeño Aponte fueron notificados que no serían ingresados al REVA hasta que proveyeran cierta documentación que éstos ya habían presentado y que por alguna razón dicha agencia no pudo acreditar tenerlos en su poder.** Aun así, el día después de habérselos solicitado, entiéndase el 3 de marzo de 2017, el señor Orta Rivera y la señora Cedeño Aponte diligentemente volvieron a someter los documentos. Luego de que éstos entregaran los referidos documentos, el Departamento de la Familia emitió la *Certificación de ingreso al REVA* e indicó que la fecha de ingreso de éstos a dicho registro fue el 21 de junio de 2017.

Lamentablemente, y durante el periodo de tiempo en que el señor Orta Rivera y la señora Cedeño Aponte completaban los trámites para la adopción de la menor DMMA, el 23 de mayo de 2017 el Panel de Selección de Candidatos para Adopción (en adelante, "Panel") celebró una sesión en la que seleccionó otro hogar adoptivo para la referida menor, por lo que ésta fue reubicada en otro hogar. Interesados en impugnar la mencionada decisión por medio de la revisión judicial del procedimiento administrativo antes reseñado, el señor Orta Rivera y señora Cedeño Aponte se dirigieron al Departamento de la Familia para que le notificaran personalmente la *Resolución* que contenía la determinación

del Panel, pero allí le informaron que dicho documento no existía.

En consecuencia, el 25 de agosto de 2017 el señor Orta Rivera y la señora Cedeño Aponte presentaron ante el Tribunal de Primera Instancia una petición de *mandamus* solicitando que dicho foro ordenara al Departamento de la Familia el notificar la mencionada *Resolución* para así poder solicitar la revisión judicial de la misma. La referida dependencia gubernamental fue oportunamente notificada de la presentación del mencionado recurso judicial.

Así las cosas, contestada la demanda, el Departamento de la Familia presentó una *Solicitud de sentencia sumaria* en la que solicitó al foro primario que desestimara la causa de acción presentada por el señor Orta Rivera y la señora Cedeño Aponte, pues, a su mejor entender, éstos carecían de legitimación activa para incoar la misma. Ello, pues estos últimos no constaban en el REVA como hogar adoptivo potencial al momento en que el Panel evaluó la adopción de la menor DMMA y tomó la decisión en cuestión. Consecuentemente, a juicio de la referida dependencia gubernamental, nunca tuvieron derecho a participar en el proceso de selección del hogar preadoptivo de ésta, por lo que no tenían legitimación para ser notificados de la determinación que tomó el Panel.

A dicha solicitud, el señor Orta Rivera y la señora Cedeño Aponte se opusieron. **En síntesis, plantearon: (1) que la demora en el proceso de certificación como hogar preadoptivo fue el resultado de maquinaciones, o mínimo**

**negligencia, y mala fe del Departamento de la Familia y (2) que la fecha de ingreso al REVA debió ser al momento en que solicitaron certificarse como hogar preadoptivo o, en la alternativa, en la fecha que se determinó que el estudio social resultó favorable por lo que procedía se les notificara la *Resolución* del Panel.**

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia declaró ha lugar la moción de sentencia sumaria presentada ante su consideración, pues, a su juicio, el señor Orta Rivera y la señora Cedeño Aponte carecían de legitimación activa para incoar el presente litigio. Dicha determinación fue notificada en tiempo a todas las partes en el pleito.

Inconformes con la decisión emitida por el foro primario, bajo fundamentos similares a los presentados ante el Tribunal de Primera Instancia, el señor Orta Rivera y la señora Cedeño Aponte recurrieron ante el Tribunal de Apelaciones mediante recurso de *certiorari*, en el que argumentaron que no procedía la desestimación de la demanda. El Departamento de la Familia, por su parte, presentó su alegato en oposición reiterando lo alegado ante el foro primario.

Examinados los alegatos presentados por ambas partes, el foro apelativo intermedio confirmó el dictamen emitido por el Tribunal de Primera Instancia, pues razonó que el señor Orta Rivera y la señora Cedeño Aponte carecían de

legitimación activa para incoar el caso que nos ocupa. Insatisfechos aún, éstos presentaron una moción de reconsideración ante el Tribunal de Apelaciones, la cual fue denegada por dicho foro.

Así pues, el señor Orta Rivera y la señora Cedeño Aponte comparecieron ante nos solicitando a esta Curia que revisara la determinación de los foros inferiores, pues, en su opinión, éstos erraron en declarar ha lugar la moción de sentencia sumaria por falta de legitimación activa. El 4 de diciembre de 2018 el Pleno de este Tribunal declaró no ha lugar el mencionado recurso de *certiorari*.

En consecuencia, estos presentaron una primera solicitud de reconsideración, la cual fue denegada mediante *Resolución* de 25 de enero de 2019.

Insatisfechos aún, el señor Orta Rivera y la señora Cedeño Aponte presentaron ante nos una *Urgente: Segunda Solicitud de reconsideración*. Examinada cuidadosa y detenidamente la misma, el 1 de marzo de 2019 declaramos con lugar dicho petitorio y expedimos el presente recurso en reconsideración.

Contando con el beneficio de la comparecencia de todas las partes en el pleito, estamos en posición de resolver. Procedemos a así hacerlo.

II.

A.

Sabido es que la *Ley de reforma integral de procedimientos de adopción,* Ley Núm. 186-2009,[1] según enmendada, 8 LPRA sec. 1051-1071 (2017) (derogada), disposición legal que rige la presente controversia, se formuló con el propósito de "viabilizar un procedimiento diligente y expedito de adopción". Véase, Exposición de motivos de la Ley Núm. 186-2009.

Cónsono con ello, esta ley creó el REVA, un registro que incluiría: (1) una lista con todos los menores cuyo plan de permanencia es la adopción y que aún no han sido privados de patria potestad; (2) una lista con todos los menores cuyo plan de permanencia es la adopción y que han sido privados de patria potestad; (3) una lista de toda parte adoptante interesada en adoptar, según el orden cronológico de solicitud; y (4) **una lista de toda parte adoptante, con estudio social pericial favorable, según el orden cronológico de dicho estudio**. Art. 4 de la Ley Núm. 186-2009, 8 LPRA sec. 1063a. Así también lo dispone el *Reglamento para regir los procesos y procedimientos de servicio de adopción*, Reglamento Núm. 7878, (en adelante, "Reglamento Núm. 7878") formulado por el Departamento de la Familia en cumplimiento con la Ley Núm. 186-2009, *supra*. Véase, además, Sección 9.2.1 del Reglamento Núm. 7878.

---

[1] Esta Ley fue derogada por la *Ley de adopción de Puerto Rico,* Ley Núm. 61-2018.

Para que una persona interesada en adoptar pueda ingresar al REVA, ésta debe "suministrar un estudio social pericial firmado, los documentos legales y [dar] cumplimiento estricto con el reglamento aprobado por el Departamento de la Familia". Art. 4 de la Ley Núm. 186-2009, 8 LPRA sec. 1063a. Dicho informe de estudio social se realizará dentro del término de treinta (30) días contados a partir de la presentación de la solicitud de adopción.[2]

En cuanto al proceso de selección de los padres adoptivos para un menor, el *Reglamento para regir los procesos del Panel de Selección de Candidatos para la Adopción*, Reglamento Núm. 8597, (en adelante, "Reglamento Núm. 8597") establece que se nombrará a un Panel que evaluará la capacidad de los hogares adoptantes potenciales para satisfacer las necesidades del menor, considerando el estudio social y el mejor bienestar de éste. Art. 15 del Reglamento Núm. 8597. Evaluados dichos elementos, el Panel elegirá el hogar preadoptivo del menor del que se trate, mediante el mecanismo de votación. Art. 9 del Reglamento Núm. 8597.

---

[2] La petición de adopción debe ser acompañada con los siguientes documentos: (1) certificado de nacimiento del adoptante y del adoptando; (2) certificado del estado civil del adoptante y del adoptando; (3) certificado de antecedentes penales del adoptante; (4) consentimiento por escrito del padre o los padres biológicos cuando estos estén disponibles; (5) informe de estudio social pericial para la adjudicación de la adopción en caso de que el mismo esté disponible; (6) moción de señalamientos y proyectos de resolución en casos que no sean contenciosos; (7) proyecto de nuevo certificado de nacimiento; (8) certificación negativa de deuda de la Administración de Sustento a Menores (ASUME); y (9) evidencia de notificación previa de copia del legajo de adopción a la Procuradora de Relaciones de Familia y a la Oficina correspondiente del Departamento de la Familia. Ley de procedimientos legales especiales, 32 LPRA sec. 2699b.

Así las cosas, un hogar adoptivo potencial que resulte adversamente afectado por la decisión del Panel, deberá ser notificado de tal determinación mediante *Resolución*. La notificación deberá contener los fundamentos en los que se basó la decisión, las disposiciones legales o reglamentarias aplicables y una advertencia sobre el derecho a solicitar la revisión judicial. Art. 9 del Reglamento Núm. 8597. Además, deberá contener la fecha en que se emitió la decisión y la firma de todos los miembros del Panel que participaron en la determinación. Sólo así el hogar adoptivo potencial afectado podrá presentar un recurso de revisión judicial ante el Tribunal de Apelaciones en un término de treinta (30) días a partir de la notificación de la *Resolución.* Art. 18 del Reglamento Núm. 8597.

III.

Establecido lo anterior, y por considerarlo en extremo pertinente para la correcta disposición de la controversia ante nuestra consideración, conviene señalar aquí que, en nuestra jurisdicción, los tribunales estamos llamados a atender únicamente aquellas controversias que sean justiciables. *P.I.P. v. E.L.A*, 186 DPR 1 (2012); *Lozada Sánchez v. JCA*, 184 DPR 898 (2012); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). Ello es así, puesto que, desde hace ya varias décadas atrás, decidimos adoptar -- por vía jurisprudencial -- tal requisito de autolimitación judicial existente en la jurisdicción federal. *Asoc. de*

*Periodistas v. González*, 127 DPR 704 (1991), esc. 6; *Estado Libre Asociado de P.R. v. Aguayo*, 80 DPR 552 (1958). Véase, además, J. J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, pág. 97.

En esencia, la doctrina de justiciabilidad busca evitar la obtención de un fallo sobre una controversia que en realidad no existe, una determinación sobre un derecho que no ha sido reclamado, o una sentencia que, en el momento en que se dicta, no podrá tener efectos prácticos sobre una controversia. *Moreno v. Pres. U.P.R. II*, 178 DPR 969 (2010); *Estado Libre Asociado de P.R. v. Aguayo*, *supra*. Dicho de otro modo, los tribunales sólo están llamados a atender controversias genuinas y vivas, donde existan intereses opuestos y que, al resolverse, tengan efecto sobre las relaciones jurídicas entre las partes en el pleito. *Asoc. Fotoperiodistas v. Rivera Schatz*, *supra*; *Noriega v. Hernández Colón*, 135 DPR 406 (1994); *Estado Libre Asociado de P.R. v. Aguayo*, 80 DPR 552 (1958).

Una de las vertientes de la doctrina de justiciabilidad es aquella que se conoce como legitimación activa. Ésta busca que "el promovente de [determinada] acción [sea] uno cuyo interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". *Asoc. Fotoperiodistas v. Rivera Schatz*, *supra*; *Hernández Torres v. Hernández Colón et al.*, 131 DPR

593 (1992); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, (1982).

**Así pues, para que en un litigio se le reconozca legitimación activa a una parte ésta debe satisfacer los siguientes requisitos: (1) haber sufrido un daño claro y palpable; (2) el referido daño debe ser real, inmediato y preciso, no abstracto o hipotético; (3) debe existir una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción debe surgir al amparo de la Constitución o de una ley**. *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017); *Col. Peritos Elec. v. A.E.E.*, 150 DPR 327 (2000); *Hernández Torres v. Gobernador*, 129 DPR 824 (1992).

IV.

De otra parte, es imperativo recordar también que el Art. II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico establece que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley […]". Esta protección constitucional se manifiesta de forma sustantiva y procesal. *Com. PNP v. CEE,* 196 DPR 706 (2016); *Díaz Carrasquillo v. García Padilla,* 191 DPR 97 (2014).

En la primera vertiente, se examina la validez de una ley al amparo de lo dispuesto en la Constitución, mientras que en la segunda se consideran las garantías procesales mínimas que el Estado debe resguardar a un individuo al tomar determinaciones que afectarán su vida, propiedad o libertad.

*Díaz Carrasquillo v. García Padilla*, *supra*; *Picorelli López v. Depto. de Hacienda*, 179 DPR 720 (2010); *Domínguez Castro et al. v. ELA I*, 178 DPR 1 (2010). **Esta última modalidad comprende el derecho de toda persona a tener un proceso justo, con todas las garantías que ofrece la ley, tanto en los foros judiciales como en los administrativos.** *Com. PNP v. CEE*, *supra*; *Aut. Puertos v. HEO*, 186 DPR 417 (2012).

De este modo, en virtud del debido proceso de ley en su vertiente procesal, el Estado está obligado a garantizar que todo procedimiento adjudicativo administrativo o judicial, debe cumplir con los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado; y (6) que la decisión se base en el récord. *Com. PNP v. CEE*, *supra*; *Díaz Carrasquillo v. García Padilla*, *supra*; *R & G v. Sustache*, 163 DPR 491 (2004).

Es, precisamente, a la luz de la normativa antes expuesta que procedemos a disponer del caso ante nuestra consideración.

V.

Como ha quedado claramente demostrado, en el presente caso el señor Orta Rivera y la señora Cedeño Aponte iniciaron oportunamente el proceso de adopción de la menor DMMA y cumplieron a tiempo con todos los requerimientos que les

hacía el Departamento de la Familia. No empece a ello, la **negligencia crasa** desplegada por la referida dependencia gubernamental en el manejo del referido proceso ocasionó que el señor Orta Rivera y la señora Cedeño Aponte, a pesar de la diligencia empleada, no constaran en el REVA al momento en que el Panel determinó el hogar preadoptivo de la menor DMMA.

No olvidemos que el señor Orta Rivera y la señora Cedeño Aponte recibieron a la menor DMMA en su hogar desde los cinco (5) días de nacida, cubriendo todas sus necesidades y brindándole todas las atenciones correspondientes. Así, continuaron cuidando de la menor por más de dos años, desarrollando -- como es natural -- un profundo afecto hacia ésta, por lo que decidieron hacerla oficialmente parte de su familia. Lamentablemente, debido al inadecuado manejo de su caso por parte del Departamento de la Familia, éstos vieron tronchado su anhelo de ser los padres de la menor en cuestión, sin contar tan siquiera con un debido proceso de ley. Sin duda alguna, esto resultó en un evento traumático para el señor Orta Rivera y la señora Cedeño Aponte.

Siendo ello así, y ante el daño causado, a todas luces atribuible a las actuaciones del Departamento de la Familia, el señor Orta Rivera y la señora Cedeño Aponte tenían legitimación activa para reclamar que se les notificara la decisión adversa del Panel. No procedía aquí cerrar las puertas del Tribunal a ciudadanos que llevaron a cabo todos los procedimientos correspondientes -- en el contexto de la

adopción de una menor -- conforme a la ley y el reglamento aplicable, avalando con ello las cuestionables actuaciones de una dependencia gubernamental que hizo todo lo contrario.

Recordemos que, al momento de resolver un caso como éste, en todo momento debemos asegurarnos de velar por el mejor bienestar del menor. Para ello, en lo que a este litigio se refiere, se debían tomar en consideración todos los hogares con estudio social pericial favorable, que debían estar incluidos en el REVA. Esto incluía, claro está, al señor Orta Rivera y la señora Cedeño Aponte. Se cometió, pues, el error señalado.

## VI.

Por los fundamentos antes expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones, se determina que el señor Orta Rivera y la señora Cedeño Aponte tienen legitimación activa para impugnar la *Resolución* del Panel de Selección de Candidatos para Adopción y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo dispuesto por este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco emite la siguiente expresión de conformidad a la que se une el Juez Asociado señor Kolthoff Caraballo:

> Estoy conforme con la Sentencia que antecede. La controversia que enfrentamos hoy, específicamente si el Sr. Josué Orta Rivera y la Sra. Sonia Cedeño Aponte (los peticionarios) carecen de legitimación

activa para impugnar una determinación del Panel de Selección de Candidatos para Adopción, adscrito al Departamento de la Familia, ha sido objeto de mucha ponderación por este Tribunal. Como bien señala la Sentencia, el Departamento de la Familia demostró negligencia en el manejo del proceso para ingresar al Registro Estatal Voluntario de Adopción (REVA). Dicho error, culminó en que la menor fuese adoptada por otro hogar. Esto no puede pasar por alto. El Departamento de la Familia y su personal deben siempre velar por el mejor bienestar de los menores y sus procesos internos no pueden socavar las solicitudes de adopción que con tanta ilusión son presentadas.

Por último, resulta pertinente expresarme sobre el efecto que pueda tener esta decisión en cuanto a la adopción de la menor. En este caso, el proceso de impugnación de adopción comenzó el 1 de octubre de 2018, cuando los peticionarios presentaron una petición de *certiorari* ante este Tribunal solicitando la revisión de la Resolución del 31 de agosto de 2018 del Tribunal de Apelaciones. El Tribunal de Apelaciones había denegado la expedición del recurso de *certiorari* en el que los peticionarios solicitaron que se dejara sin efecto la Sentencia de adopción dictada por el Tribunal de Primera Instancia el 28 de agosto de 2017. Luego de varios trámites procesales, este Tribunal declaró no ha lugar a la petición de *certiorari* presentada por los peticionarios. Conforme a este tracto procesal, la adopción que tenemos ante nos es una final y firme. La Sentencia provista por este Tribunal durante el día de hoy en nada afecta lo ya resuelto en cuanto al hogar de la menor. No obstante, mediante esta Sentencia llevamos un mensaje claro al Departamento de la Familia, que las solicitudes de adopción que le son presentadas deben de ser manejadas con diligencia y con el más alto cuidado para evitar situaciones como la de autos, una que ha causado un sufrimiento emocional para todas las partes involucradas.

El Juez Asociado señor Estrella Martínez emite Opinión de Conformidad a la cual se une el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez disiente con

opinión escrita a la cual se unen la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Martínez Torres.


                              Sonnya Isabel Ramos Zeno
                    Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sonia Cedeño Aponte & Josué Orta Rivera<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Departamento de la Familia & Departamento de Justicia<br><br>Recurridos | CC-2018-0647 | *Certiorari* |

Opinión de conformidad emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une el Juez Asociado señor COLÓN PÉREZ

San Juan, Puerto Rico, a 27 de diciembre 2019.

Hace más de un año, este Tribunal advino en conocimiento de que la adopción de la menor DMMA se realizó mediante un proceso crasamente negligente. Particularmente, las personas que criaron y cuidaron a la menor de edad desde sus cinco días de nacida hasta sus dos años de edad comparecieron ante este Tribunal y solicitaron desesperadamente que, como mínimo, se les considerara en el proceso de adopción por haber sido indebidamente excluidos del Registro. Ante esta realidad, una mayoría de este Tribunal optó por no expedir el recurso ante su reconsideración. Por tales razones, emití el Voto particular disidente, Cedeño Aponte et al. v. ELA et al., 201 DPR 524 (2018), al cual se unió la Juez Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García. De igual modo, el Juez Asociado señor Colón Pérez hizo constar que

hubiese expedido el recurso. Eventualmente, se expidió el recurso en reconsideración.

Afortunadamente, hoy se revoca la decisión de los foros recurridos que validaron tal proceder. Sin embargo, la disidencia nos invita a asumir, desde un tribunal de última instancia, que el mejor bienestar de una menor de edad responde al hogar adoptivo seleccionado negligente y erróneamente por el Departamento de la Familia. Ante ello, hay que preguntarse si un proceso de adopción plagado de errores procesales y exclusiones ilegales puede garantizarnos a ciegas, desde el último foro de instancia, el mejor bienestar de la menor de edad. No puedo contestar categóricamente en la afirmativa, como lo plantea la disidencia. Por tal razón, estoy conforme con devolver el caso al Tribunal de Primera Instancia para la continuación de procedimientos ulteriores conforme a los dispuesto en la Sentencia. Solamente de esta forma se podrá contestar apropiadamente esta interrogante, pues es tal foro el que tiene las herramientas para solicitar, aquilatar y evaluar la prueba necesaria para tomar una determinación de tal magnitud. Una contestación que se ha dilatado, precisamente, por el calvario procesal que han vivido los peticionarios, el cual comenzó con el trámite en el Departamento de la Familia y se extendió hasta la denegatoria de su primer recurso ante este foro y, posteriormente, la denegatoria de consolidar sus recursos. Hemos tardado más de un año para expedir en reconsideración el recurso que nos ocupa y lamentablemente se le imputa erróneamente a una mayoría de este Tribunal no promover el bienestar de la menor.

Respetuosamente, reitero que no nos compete en esta etapa dictaminar que el bienestar de la menor se promueve ni con una ni

con otra pareja, sino que la <u>Sentencia</u> emitida logra hacer una recomposición de **todos** los factores que debió tomar en cuenta el foro primario para adjudicar cabalmente y proteger el bienestar de la menor. Precisamente, por la importancia que tiene el bienestar de una menor de edad, no podemos tomar una decisión de esta magnitud mediante inferencias y presunciones. El bienestar de la menor de edad no está escrito en piedra en una <u>Sentencia</u>. Así no operan las relaciones de familia. La Rama Judicial tiene que tener la capacidad de corregir errores, vengan de donde vengan, y velar **continuamente** por el bienestar de los y las menores de edad. De lo contrario, las adjudicaciones de relaciones de familia tendrían un carácter de cosa juzgada no revisable, lo cual precisamente es lesivo a la protección continua que precisamente requieren los y las menores de edad.

A la luz de todo lo anterior y de mis pronunciamientos en el Voto particular disiente, <u>Cedeño Aponte et al. v. ELA et al.</u>, 201 DPR 524 (2018), consecuentemente estoy conforme con la <u>Sentencia</u> emitida.

                                        Luis F. Estrella Martínez
                                             Juez ASociado

Sonia Cedeño Aponte y José
Orta Rivera

       Peticionarios

          v.

Estado Libre Asociado de
Puerto Rico, Departamento de
la Familia y Departamento de
Justicia

       Recurridos

CC-2018-647

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente, a la cual se unen la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ y el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 27 de diciembre de 2019.

"El propósito de la adopción debe ser alcanzado sin que de ninguna manera se sacrifique el **propósito primordial** de dicha institución: el bienestar del menor [...] [L]a adopción debe servir el **propósito** de proteger **al menor**". López v. ELA, 165 DPR 280, 300-301 (2005) (citas omitidas) (Énfasis en el original). La Sentencia que una Mayoría de este Tribunal emitió no promueve el bienestar de la menor y por ello, disiento enérgicamente.

De entrada, es imprescindible destacar que la adopción de la menor DMMA por parte del Sr. Antonio José Martín Morales y la Sra. Zulaika Ginés Ruiz -quienes la han cuidado desde mayo de 2017- **ya advino**

**final y firme**. Así lo confirmó este Tribunal al denegar un recurso de *certiorari* que presentaron los peticionarios cuyo propósito fue, precisamente, impugnar la adopción de la menor DMMA.[3] Al denegar este recurso, así como las dos mociones de reconsideración subsiguientes, este Tribunal validó el proceso de adopción que hoy pareciera querer revertir.[4] Si bien devolver el caso al Tribunal de Primera Instancia pudo ser una opción razonable hace cinco años, en esta etapa es un curso de acción contradictorio, confuso y contrario a derecho. Más allá de denunciar los errores que cometió el Departamento de la Familia, esta determinación solo logra que este asunto continúe litigándose en las agencias y tribunales del País, con las implicaciones detrimentales para la menor DMMA así como para las familias involucradas.

No tengo dudas de que este caso se desató por la negligencia que desplegó el Departamento de la Familia en el manejo de la solicitud de adopción que presentaron los peticionarios. Tampoco dudo que ello ocasionó y ocasiona sufrimiento emocional a todas las personas involucradas. Aunque entiendo la desesperación que deben sentir los peticionarios y su anhelo por remediar la injusticia que sufrieron a manos de la agencia, la función judicial que desempeño me impide abstraerme del mandato claro de la jurisprudencia de este

---

[3] Véanse las *Resoluciones* que emitió este Tribunal el 2 de noviembre de 2018, 18 de enero de 2019 y 15 de febrero de 2019, según constan anejadas al expediente del recurso de *certiorari* CC-2018-0876.

[4] Adviértase que no existe una diferencia real entre permitir que los peticionarios impugnen el procedimiento administrativo que culminó en la adopción y permitir que impugnen la adopción como tal, pues el resultado neto es el mismo: despojar de finalidad a la adopción de la menor DMMA, a pesar de haber sido este propio Tribunal quien le confirió tal carácter al negarse a expedir el recurso de *certiorari* CC-2018-0876 que presentaron los peticionarios.

Tribunal, conforme a la cual "[l]os derechos de adopción de una pareja tienen que ser reconciliados con el interés estatal en velar por el bienestar del menor". López v. ELA, *supra*, págs. 305-306.

Este Tribunal no obró de forma cónsona con esta norma.  A fin de cuentas, el efecto práctico de su decisión parece retrotraer el proceso a una etapa que caducó. La Sentencia pareciera ordenar que el Departamento de la Familia notifique a los peticionarios la Resolución con su determinación, para que estos entonces puedan solicitar la revisión judicial de la misma y, tras múltiples trámites procesales, en el mejor de los escenarios en su día ser incluidos en el REVA como hogar adoptivo potencial para una menor que lleva años ya viviendo en otro núcleo familiar. No estoy clara qué pretende la Sentencia: ¿que el Panel evalúe la adopción de la menor, esta vez tomando en consideración a los peticionarios? Mi preocupación es que al final ese proceso pudiera culminar con la remoción de la niña del hogar en donde ha vivido, se ha desarrollado y donde se ha integrado durante los pasados tres años. Precisamente debido a su edad actual -5 años- la menor tiene mayor conciencia de la realidad de su entorno y del hogar que ha formado con las figuras que reconoce como sus padres. Ante ello, cualquier cambio puede infligir una cicatriz emocional permanente. **Es decir, la decisión de la Mayoría de este Tribunal puede desembocar en un tercer cambio de hogar para la menor en un espacio de tan solo cinco años.**

**No hay que ser un experto en ciencias conductuales para inferir lo obvio: remitir este caso al Tribunal de Primera**

**Instancia para que —a estas alturas— inicie o revierta todo el proceso, y que, potencialmente, en su día dilucide cuál hogar es más apto para la menor desencadenará un proceso emocionalmente tortuoso.** La incertidumbre y el desasosiego al que someteremos a una criatura de cinco años es impensable e imperdonable, y tendrá un efecto nefasto para su salud emocional y la de su nueva familia. Esta familia ahora estará sometida a vistas en el tribunal, a evaluaciones múltiples de trabajadoras sociales y a informes periciales, entre tantos otros procesos que, sin duda, desestabilizarán el núcleo familiar de la niña. Esta saga, que podríamos evitar, prolongará lo que es ya una experiencia traumática para las familias, pero sobre todo, para la niña.

En fin, el proceder cuestionable del Departamento de la Familia cuando completó el proceso de adopción mientras los peticionarios realizaban trámites para ingresar al REVA no debió ocurrir. Mas dicho error jamás debió dar paso a que este Tribunal concediera un remedio cuyo efecto es subvertir la estabilidad emocional y el bienestar de la menor en una etapa crucial de su desarrollo.[5] Al enfocar el análisis en el agravio

---

[5] Nada en el expediente sugiere que el Sr. Antonio José Martín Morales y la Sra. Zulaika Ginés Ruiz —quienes actualmente cuidan de la menor— incumplieron con algún requisito durante el proceso de adopción. Por tanto, cuando la Opinión de Conformidad que acompaña esta Sentencia aduce que el hogar adoptivo fue "seleccionado negligentemente", se refiere —necesariamente— a la exclusión de los peticionarios del Registro Estatal Voluntario de Adopción y no a que el hogar en donde el Departamento de la Familia reubicó la menor exhibiera alguna característica que lo hiciera inadecuado para esos propósitos. Opinión de Conformidad, pág. 2. Incluso, el Tribunal de Primera Instancia, al declarar con lugar la petición de adopción que presentaron el señor Martín Morales y la señora Zulaika Ginés Ruiz, hizo constar expresamente que estos "profesan un gran cariño paternal hacia la menor, quien han cuidado y atendido como si fuera su propia hija" y "poseen un buen hogar y tienen los medios para brindar a la menor educación y futuro bienestar". Sentencia del Tribunal de Primera Instancia, Apéndice del recurso CC-2018-0876, pág. 51.

que el Departamento de la Familia ocasionó a los peticionarios la Mayoría perdió de vista el criterio adjudicativo histórico que rige en estos casos: procurar **por encima de cualquier otro criterio** la estabilidad y salud emocional del menor.

Se cometió una gran injusticia con los peticionarios, pero la pregunta que nos debemos hacer es si una niña de cinco años debe ser quien pague las consecuencias de los errores que cometió el Departamento de la Familia. En vista de que la Mayoría decidió actuar contrario a derecho y en el proceso anteponer los intereses de los peticionarios a los de la niña, decido darle voz y disentir enérgicamente.


Maite D. Oronoz Rodríguez
Jueza Presidenta